IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TOM HOLDINGS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No.: 1:20-cv-01837 |
| ) | |
| **GEMINI INSURANCE COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

### PLAINTIFF'S COMPLAINT

Plaintiff TOM Holdings Inc. ("TOM"), formerly known as Terminal Operations Management, Inc., alleges the following claims for declaratory judgment, breach of contract, and breach of the duty of good faith and fair dealing against Defendant Gemini Insurance Company ("Gemini"):

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff TOM is a corporation that operated the intermodal terminals for CP Rail at Bensenville and Schiller Park, Illinois. TOM is organized under the laws of the State of Minnesota, with its executive offices in Minnesota.

2. Defendant Gemini is a corporation organized under the laws of the State of Delaware, with its executive offices in the State of Connecticut. Gemini is authorized to transact business, and has transacted business, in Illinois.

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds the value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) & (3) because a substantial part of the events or omissions giving rise to these claims occurred within this district, and/or because Gemini is subject to this Court's personal jurisdiction with respect to this action.

72803990.1

**GENERAL ALLEGATIONS**

5. TOM incorporates by reference each and every allegation contained in paragraphs 1 through 4 of this Complaint.

6. This is an action for declaratory judgment, breach of contract, breach of the duty of good faith and fair dealing, and punitive damages.

**THE POLICY**

7. TOM purchased from Gemini a Commercial General Liability Policy, No. VMGP002671 (Policy"), with a policy period of December 1, 2016 to December 1, 2017. A true and correct copy of the Policy is attached hereto as **Exhibit 1**.

8. Under the Policy's provisions, Gemini agreed to pay "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

9. Gemini's insuring obligation includes "liability for damages . . . [a]ssumed in a contract or agreement that is an 'insured contract.'"

10. "[F]or the purposes of liability assumed in an 'insured contract', reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or 'property damage', provided:

    a. "Liability to such party for, or for the cost of, that party's defense has also been assumed in the same 'insured contract'; and

    b. "Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged."

11. Under Endorsement 23, the Policy defines "insured contract" to include: "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization, **provided the 'bodily injury' or 'property damage' is caused, <u>in whole or in</u>**

**part, by you** or by those acting on your behalf. . . . Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." (emphasis added).

12. The Policy has an occurrence limit of $1 million and a general aggregate limit of $2 million.

## THE INSURED CONTRACT WITH CANADIAN PACIFIC

13. On June 5, 2009, TOM entered into a Supply of Service Agreement ("CP Agreement") with Soo Line Railroad Company, d/b/a Canadian Pacific ("CP"). A true and correct copy of the CP Agreement is attached hereto as **Exhibit 2**.

14. Under the CP Agreement, TOM agreed to supply CP with the employees and other services needed to carry on the railway intermodal service at the Bensenville Intermodal Facility, located at 10800 South Franklin Avenue, Franklin Park, IL. [*Id.*].

15. The CP Agreement includes the following indemnity agreement:

11. **Indemnity and Waiver:** To the fullest extent permitted by law, Contractor **[TOM] shall be liable to CP for and shall indemnify and save harmless CP** from and against any and all claims, suits, demands, awards, actions, proceedings, losses, costs, damages or expenses (including legal costs on a solicitor and own client basis and/or attorneys' fees, as applicable) suffered or incurred by CP that arise out of, result from, are based upon or are in any way connected with this Agreement, including without limitation:

(a) those resulting from any act or omission on the part of Contractor;
(b) those resulting from any action, suit or proceeding brought by any third party;
(c) those brought or executed in respect of personal injury (including injury resulting in death) or damage or destruction of property, including CP's property;
* * *
The foregoing indemnity and waiver given by Contractor shall not apply to the extent of CP's own negligence. The onus of establishing that CP was negligent shall be upon Contractor. CP shall not be deemed to have caused or contributed thereto merely by reason of its knowledge, approval or acceptance of the materials, shop drawings, specifications, supplies, equipment, procedures or services of Contractor. (emphasis added).

16. On its face, and under the Policy's unambiguous language, the CP Agreement's indemnification provisions constitute an "insured contract."

3

72803990.1

## **THE DENTON LAWSUIT & CP'S INDEMNIFICATION DEMAND**

17. On December 26, 2018, Robert Denson filed a complaint in the State of Illinois that named CP and TOM as defendants ("Denson Complaint"). A true and correct copy of the Denson Complaint is attached hereto as **Exhibit 3**.

18. Denson alleges that on January 9, 2017 he was an employee of CP that was working at the CP Rail Chicago Intermodal Terminal located in Bensenville, Illinois. [*Id.* at ¶¶ 4-5].

19. Denson alleges that he was riding a shove move that day "when an agent or employee of Defendant TOMS driving a piggy-packer backed up into the shove move, striking the car Plaintiff was riding on and causing Plaintiff to be knocked off the car, sustaining serious injuries." [*Id.* at ¶ 6].

20. Denson alleges that "[a]t the time of his injury, [Denson] was acting within the scope of his employment and in furtherance of [CP]'s business." [*Id.* at ¶ 7].

21. Denson alleges that "it was a non-delegable duty of Defendant, [CP], by and through its employees, agents, and apparent agents, to provide [Denson] a reasonably safe place to work." [*Id.* at ¶ 8].

22. Denson alleges various duties that CP allegedly breached, all of which relate to the injury Denson allegedly suffered from a piggy-packer allegedly driven by an agent or employee of TOM. [*Id.* at ¶ 9].

23. On February 15, 2019, pursuant to the CP Agreement, CP tendered to TOM "CP's Formal Tender for full defense, and indemnity for the claims made against CP by Mr. Denson," and demanding that "TOM bear all such costs and expenses and legal fees associated with CP's defense, as well as indemnify CP for payment of any settlement or judgment CP may be required to pay regarding this claim." A true and correct copy of the February 15, 2019 tender ("CP Demand") is attached hereto as **Exhibit 4**.

72803990.1

**GEMINI'S BAD FAITH DENIAL OF COVERAGE**

24. On May 17, 2019, Gemini responded to the CP Demand, acknowledging that "[t]he tender was based on an indemnity provision in the contract entered into between TOM and CP." A true and correct copy of Gemini's May 17, 2019 denial letter ("Gemini's Denial") is attached hereto as **Exhibit 5**.

25. Gemini's Denial stated that "Gemini has determined that there is no coverage available to CP under the Gemini Policy for the Denson Lawsuit." [*Id.* at 1].

26. Gemini's Denial specifically denied "insured contract" coverage on the unsupportable grounds that the CP Agreement is not an insured contract because "the Agreement explicitly states that TOM's indemnity obligation shall not apply to the extent of CP's own negligence . . . ." [*Id.* at 5].

27. Gemini's assertion that an "insured contract" must be for the indemnitee's own negligence (as opposed to tort liability) is clearly and directly contradicted by the Policy's own language, which states that under an insured contract "the 'bodily injury' or 'property damage' is caused, **in whole** or in part, by [TOM] or by those acting on [TOM's] behalf." [Policy, Ex. 1 hereto at Endorsement 23].

28. Gemini's definition of "tort liability" as "CP's own negligence" is not found anywhere in the Policy.

29. Instead, the Policy clearly defines "tort liability" as "a liability that would be imposed by law in the absence of any contract or agreement." [*Id.*].

30. Denson's Complaint does **not** allege that CP's liability arises out of contract, and the alleged liability is therefore "tort liability" as clearly defined by the Policy.

31. Gemini has taken the position that an insured contract cannot be for bodily injury caused "in whole . . . by TOM," which is the direct opposite of the Policy's actual language.

32. On November 15, 2019, TOM sent a letter to Gemini pointing out the baseless nature of its refusal to reimburse TOM for defense costs and indemnification under the CP

5

72803990.1

Agreement as an insured contract. A true and correct copy of the November 15, 2019 letter is attached hereto as **Exhibit 6**.

33. In its November 15, 2019 letter, TOM made clear that "the Policy requires the exact opposite outcome as Gemini's statement that 'TOM must have agreed to indemnify CP for CP's own tort liability, i.e. CP's own negligence.'"

34. TOM pointed out that "Gemini's conclusion is simply unreasonable and, frankly, inexplicable." [*Id.* at 2].

35. On December 12, 2019, Gemini responded by reiterating its denial of any coverage for TOM's liability under the CP Agreement as an insured contract. A true and correct copy of Gemini's December 12, 2019 letter is attached hereto as **Exhibit 7**.

36. In its December 12, 2019 letter, Gemini once again intentionally disregarded the Policy's actual language and provisions by stating that "an 'insured contract' is an agreement to indemnify somebody else for his or her own negligence." [*Id.* at 2]. Nowhere does the Policy make this statement.

37. Rather, the Policy states the exact opposite by providing that an insured contract includes where TOM caused the bodily injury "in whole." [Policy, Ex. 1 hereto at Endorsement 23]. Gemini's position is that an insured contract does not include bodily injury caused "in whole" by TOM.

38. Gemini's December 12, 2019 letter again intentionally ignores the Policy's actual definition of "tort liability" as "liability that would be imposed by law in the absence of any contract or agreement," and instead interposes its own definition as liability for somebody else's own negligence.

39. Gemini's newly created definition contradicts Policy provisions and is only intended to benefit Gemini to the detriment of its insured.

## COUNT I
### (Breach of Contract)

40. TOM incorporates by reference each and every allegation contained in paragraphs 1 through 39 of this Complaint.

6

41. The Policy is a valid contract between TOM and Gemini.

42. The Policy requires Gemini to pay for defense costs and potential indemnification of CP in the Denson lawsuit.

43. Gemini has breached the contract by refusing to pay for CP's defense costs and potential indemnification in the Denson lawsuit.

44. TOM has been damaged by Gemini's breach.

## COUNT II
### (Breach of Duty of Good Faith and Fair Dealing)

45. TOM incorporates by reference each and every allegation contained in paragraphs 1 through 44 of this Complaint.

46. Gemini has a duty of good faith and fair dealing under the Policy, 215 ILCS 5/155 ("Section 155"), and other applicable law.

47. Gemini has breached its duty of good faith and fair dealing, including as set forth in paragraphs 24 through 39 above.

48. Gemini's coverage position lacked a reasonable basis.

49. Gemini's conduct as described in paragraphs 24 through 39 above was vexatious and unreasonable.

50. Gemini compelled TOM to file this lawsuit to recover the benefits to which it is entitled under the Policy.

51. Gemini's bad faith has caused TOM damages.

52. For the reasons stated above, Gemini is liable under Section 155 and other applicable law.

## COUNT III
### (Declaratory Judgment)

53. TOM incorporates by reference each and every allegation contained in paragraphs 1 through 52 of this Complaint.

54. As set forth above, the Policy provides coverage for defense costs and indemnification pursuant to the CP Agreement as an insured contract.

72803990.1

55. Gemini has refused to pay for a defense and indemnification pursuant to the insured contract.

56. The controversy between TOM and Gemini relates to the Policy and is present, substantial, justiciable, and sufficiently invokes this Court's powers to declare the parties' rights and liabilities.

57. The actual controversy between TOM and Gemini warranting declaratory judgment includes, but is not limited to, the Policy's requirement that Gemini pay for CP's defense costs and indemnification in the Denson lawsuit, as well as the meaning of Policy provisions relating to insured contracts, Gemini's duty to pay TOM for future defense costs for CP, and the consequences of Gemini's failure to pay for this defense.

58. Gemini's coverage position lacked a reasonable basis.

## **PUNITIVE DAMAGES**

59. TOM incorporates by reference each and every allegation contained in paragraphs 1 through 58 of this Complaint.

60. Gemini intended to injure its policyholder and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to TOM, as set forth above.

61. Gemini's conduct was oppressive, outrageous, and/or intolerable.

62. Gemini acted intentionally with the express purpose of harming TOM's interests.

63. Gemini's conduct amounts to an utter indifference and reckless disregard of its policyholder's financial welfare.

WHEREFORE, TOM respectfully requests judgment as follows:

A. A declaration that Gemini has a duty to pay defense costs in connection with the Denson matter and a duty to indemnify in connection with the Denson matter, that Gemini took unreasonable and vexatious coverage positions, and declaring the the consequences of Gemini's breach of the duty to defend;

B. An award against Gemini of actual and compensatory damages, in the amount established by the evidence;

72803990.1

C. An award against Gemini for damages caused by its bad faith;

D. An award against Gemini of reasonable attorneys' fees, costs and disbursements for this action, as provided under Section 155, common law, and other applicable law;

E. An award against Gemini of punitive damages in the amount established by the evidence, and as warranted by the egregious nature of Gemini's conduct;

F. An award for any and all pre-judgment and post-judgment interest at the rate applicable under the law; and

G. For such other and further relief as this Court deems just or proper.

## DEMAND FOR JURY TRIAL

TOM hereby demands a trial by jury on all issues so tryable.

Dated this 17th day of March, 2020.

        Respectfully submitted,

        POLSINELLI PC

    By: */s/ Dmitry Shifrin*
        Dmitry Shifrin
        150 North Riverside Plaza, Suite 3000
        Chicago, Illinois 60606
        Telephone: (312) 819-1900
        Facsimile: (312) 819-1910
        dshifrin@polsinelli.com

        *Attorneys for Plaintiff TOM Holdings, Inc.*